MILLER et al. v. STATE.     (No. 236—50.)

(Supreme Court, Appellate Division, Third Department.   November 11, 1914.)

1. EMINENT DOMAIN (§ 58*)—APPROPRIATION—MAPS—"BERM BANK."
    Where a map showing lands appropriated for a state canal had a note thereon stating that, where the water of a creek was shown to be on the same level as the canal, the creek was included with the canal, together with a berm bank on each side where no towpath was designated, and the evidence showed that the creek which bounded claimant's land was appropriated for canal purposes, the state was entitled to the strip designated as a "berm bank," which means a ledge at the bottom of a bank or cutting, to catch earth that may roll down the slope, or to strengthen the bank, even though there was a towpath on the opposite side of the creek.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 58.*
    For other definitions, see Words and Phrases, Berm Bank.]

2. EMINENT DOMAIN (§ 58*)—APPROPRIATION—EVIDENCE—MAP.
    Drawings found in the office of a division engineer of a state canal, which related to the location of the canal over the premises of a claimant, but which were not of such a character as to be presumptive evidence of the appropriation, may be admitted as tending to show appropriation, where, under the statute, the appropriation operated to vest title in the state, and was complete when the officers had possession of the land and constructed the canal upon it, even though the improvement made under the drawings in question was not directly canal work, but was made necessary by the previous damming of the creek for canal purposes.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 58.*]

Appeal from Court of Claims.

Claim by John B. Miller and others against the State of New York for property alleged to have been condemned for canal purposes. From a judgment of the Court of Claims (68 Misc. Rep. 607, 125 N. Y. Supp. 148), disallowing the claim, claimants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hugo Hirsh, of Brooklyn, and N. R. Holmes, of Troy, for appellants.

James A. Parsons, Atty. Gen. (Wilber W. Chambers, Deputy Atty. Gen., of counsel), for the State.

WOODWARD, J. The claim here under consideration was filed with the Court of Claims in 1909, and asked for $25,000 damages on account of a permanent improvement in the state's canals. The property in question is located in North Tonawanda, and the original source of title is the people of the state of New York by letters patent to William James. It may be conceded, for the purposes of this appeal, that the grant of unappropriated lands along the easterly side of the Niagara river, bearing date of March 8, 1824, and conveying lots 80 and 81, carried the title to the thread of Tonawanda creek, and that the grant was made prior to the construction of the Erie Canal. It appears, however, that subsequently the state took possession of Tonawanda creek as a part of the canal system of the state, and, under the law as it related to such taking, a mere appropriation of the lands under or above water, for canal purposes, vested the title in the state, and all claims which were not presented within one year from the time of making such appropriation were barred by a short statute of limitations. Rexford v. Knight, 11 N. Y. 308; People v. Fisher, 190 N. Y. 468, 83 N. E. 482.

[1] This proposition is not questioned, but the claimants contend that the maps put in evidence and relied upon in support of the judgment fail to establish that the lands in question were appropriated. It is urged that the maps known as the Holmes-Hutchinson maps of 1834, and which cover the locus in quo, do not show that the claimants' lands were appropriated. There is no dispute that these maps were made under the provisions of valid laws, and that they were properly filed in the state offices designated; but it is suggested that they were not properly proved before the Court of Claims, and that it was improper, therefore, for the court to consider the same in reaching its conclusion. The maps in question show the general lines of the canal, with its environment, and at the point involved in this controversy Tonawanda creek is shown in juxtaposition to the canal. In connection with these maps, and as a part of them, there is a written note which provides that:

"Where any stream or pond is on the same level with the waters of the canal and the navigation is conducted in such stream or pond, the stream or pond is included in the canal to the high-water mark of the stream with a berm bank on each side of fifteen links where no towing path is designated on the map."

The evidence is conclusive that Tonawanda creek was dammed and brought to the level of the canal, and that it was used as a part of the canal system and there can be no question that it was made a part of the appropriation of lands made for canal purposes. Nor is there anything in the contention that the case is taken out of the provisions of this note because there was a towing path on the south side of the

creek, in so far as it relates to the 15 links space upon the north bank, and which is a part of the lands which the claimants claim. A "berm bank," in engineering, means a ledge at the bottom of a bank or cutting, to catch earth that may roll down the slope, or to strengthen the bank. Webster. In other words, it is a necessary part of the appropriation of a creek or pond to be used for canal purposes, where the wash of passing boats requires a more substantial embankment than would ordinarily be found, and the language of the note, explaining the maps, and providing for this "berm bank" where there was no towing path, was as clearly an appropriation of this much of the land above water as though it had been inclosed within the lines of the canal itself.

The further contention that the map, which by statute was made presumptive evidence of the appropriation and title of the state, was improperly considered by the Court of Claims, is without force. While it was undoubtedly important to prove the maps, if they were to establish presumptively the facts relied upon, they were, under the circumstances disclosed by the record, properly admitted in evidence and constituted some evidence of the facts which they disclosed, and which, in connection with the entire testimony in the case, justified the conclusions of the Court of Claims.

[2] We are equally persuaded that it was not error to admit in evidence the drawings found in the division engineer's office at Rochester, and which concededly related to the location here under consideration. It was not of the character of evidence which made it presumptive as against the claimants, but it did afford evidence of the appropriation by the state of the property in connection with lawful improvements of the canal system, for it was a part of the work directed by the Legislature to be done, and, under the statute as it then existed, such an appropriation operated to vest title in the state. Rexford v. Knight, 11 N. Y. 308, 312. The appropriation is complete when the officers of the state have entered upon and taken possession of the land and constructed the canal upon it. Baker v. Johnson, 2 Hill, 342; People v. Hayden, 6 Hill, 359. It is not important that the improvement under this map was made necessary by the previous damming of Tonawanda creek for the purposes of the canal, and that it was not directly canal work.

We are of the opinion that the learned court below has fully disposed of all the questions involved in harmony with the law, and that further discussion of the steps by which their conclusion was reached is unnecessary.

The judgment appealed from should be affirmed, with costs. All concur.