AMERICAN WOOLEN COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Fourth Department, March 9, 1921.

Canals — appropriation of lands by State by entry thereon — Barge Canal Act, section 4, construed — filing of map not condition precedent to making claim for appropriation of property — claim filed sufficient as claim for damages for permanent appropriation — destruction of water rights at level long existing amounts to appropriation — measure of damages for appropriation — Court of Claims — limitation of actions — failure to file notice of intention to file claim for trespass or temporary taking of property.

The method of appropriating lands for Barge canal purposes by making and filing a map as required by section 4 of the original Barge Canal Act is not exclusive, but the State may appropriate lands by the more summary method of entry and occupation and without notice to the owner.

Accordingly, the filing of a map by the State Engineer under said section is not a condition precedent to the making of a claim for appropriation of property.

Furthermore, the Enabling Acts giving jurisdiction to the Court of Claims to award compensation for lands appropriated for Barge canal purposes show the intent of the Legislature to deal justly with persons whose lands are appropriated and not to deny payment to persons whose lands have not been appropriated by the map filing method.

As the claim was dismissed because barred by the Statute of Limitations, the claimant is entitled to the most favorable view, and the claim filed and proof presented is sufficient to apprise the State that the nature of the claim sought to be established is one for a permanent appropriation.

The destruction of the water rights of the claimant at the level long existing by raising the Oswego river by means of a dam is an appropriation of the property and if property is actually taken by the State for a public use, and the owner is excluded from its possession and loses the rights and benefits to which he was theretofore entitled, then there is an appropriation of the property.

Where there is a permanent appropriation of the property, compensation should be made by allowing as damages the market value of the property actually taken, with the consequential damage resulting to the remainder, giving consideration in the latter item to the value, if any, of the increased head of water now available to the claimant.

The Statute of Limitations has not run against the claim for the permanent appropriation of lands; but the claim for interference with the water

supply caused by the installation of a coffer dam being a mere trespass or temporary taking and not an appropriation, the claimant has lost its right to compensation by its failure seasonably to file a notice of intention to file a claim.

APPEAL by the claimant, American Woolen Company, from a judgment of the Court of Claims of the State of New York, entered in the office of the clerk of said court on the 8th day of March, 1920, dismissing the claims of the said claimant, and, as stated in the notice of appeal, from the decision of the said court upon which the said judgment was rendered.

*Davies, Auerbach & Cornell* [*Charles H. Tuttle* of counsel; *William Nottingham, Brainard Tolles* and *Martin A. Schenck* with him on the brief], for the appellant.

*Charles D. Newton, Attorney-General* [*Edward J. Mone, Deputy Attorney-General,* of counsel], for the respondent.

DAVIS, J.:

The claimant is the owner of fifteen and two-tenths acres of land on the Oswego river, situated between two dams long ago created by the State. The boundaries extend to the center of the stream. On this property are large mills, the power for their operation being furnished by the head of water from the upper dam. Between 1909 and 1913 the State engaged in the work of improving the Oswego canal by deepening the channel of the river, as authorized by chapter 147 of the Laws of 1903, and raised the level of the two dams, thereby interfering with the water power of the claimant.

It is admitted that the claimant is the owner of a vested property right, not only in the land itself but to use one-half of the surplus flow of the river impounded by the dam, and to a continued existence of the upper and lower dams at the elevations in 1909. The owner filed a claim for damages caused by this interference with its water rights, a trial was had in the Court of Claims, and its claim was dismissed on the ground that the notice of intention to file a claim was not presented within six months from the time the damage accrued, and that the limitation contained in section 264 of the Code of Civil Procedure bars the giving of a remedy.

It is admitted on the part of the State on this appeal that there has been a " taking " of the appellant's property resulting in damage. The question as to whether the Statute of Limitations has run against the claim depends entirely as to whether the acts on the part of the State constituted a taking, appropriation and use of the property for the benefit of the State for public use, or whether these acts were a temporary taking or trespass. If it was an appropriation, the claim is not barred; and if a trespass, the claimant's rights are lost by its failure seasonably to file a notice of intention to file a claim.

It, therefore, becomes necessary to determine what constitutes an " appropriation " of land by the State for public use, for which compensation must be made under the provisions of article 1, section 6, of the State Constitution. In considering this question it is necessary to examine the legislative enactments on the subject of taking property for the construction and improvement of canals, and particularly the Barge Canal Act (Laws of 1903, chap. 147) and the so-called Enabling Acts (Laws of 1915, chap. 640; Laws of 1916, chap. 420, and Laws of 1918, chap. 606). ·The original Barge Canal Act in section 4 provides: " The State Engineer may enter upon, take possession of and use lands, structures and waters, the appropriation of which for the use of the improved canals and for the purposes of the work and improvement authorized by this act, shall in his judgment be necessary. An accurate survey and map of all such lands shall be made by the State Engineer who shall annex thereto his certificate that the lands therein described have been appropriated for the use of the canals of the State. Such map, survey and certificate shall be filed in the office of the State Engineer, and a duplicate copy thereof, duly certified by the State Engineer to be such duplicate copy shall also be filed in the office of the Superintendent of Public Works. The Superintendent of Public Works shall thereupon serve upon the owner of any real property so appropriated a notice of the filing and of the date of filing of such map, survey and certificate in his office, which notice shall also specifically describe that portion of such real property belonging to such owner which has been so appropriated.   *   *   *   From the time of the service of

such notice, the entry upon and the appropriation by the State of the real property therein described for the purposes of the work and improvement provided for by this act, shall be deemed complete, and such notice so served shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the lands appropriated.    *   *   * The Court of Claims shall have jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated." While this section was amended prior to the commencement of the work of improvement and during the progress thereof, no substantial change was made in the general procedure. (See said § 4, as amd. by Laws of 1906, chap. 365; Laws of 1908, chap. 196; Laws of 1909, chap. 273, and Laws of 1911, chaps. 468, 736; since amd. by Laws of 1913, chap. 801.)

Is the filing of a map a condition precedent to the making of a claim for an appropriation of property, or in other words, is the method of appropriation by the making and filing of a map made by statute the only method of appropriating property for the use of the improved canal? We think not. That is a mere matter of procedure, as a proceeding to condemn the property would be. It would give no effect to the words at the beginning of the section, that the State Engineer may enter upon, take possession of and use lands in his judgment necessary for the purposes of the work and improvement. To hold that this method was exclusive, might prevent taking a small amount of land or a structure or property rights inadvertently omitted from the map or imperfectly described or delineated thereon. One method always used by the State in exercising the right of eminent domain is by entry and occupation summarily and without notice to the owner. This was the method heretofore employed in the construction of canals. (See *Van Alstine* v. *Belden,* 41 App. Div. 123; affd., 161 N. Y. 661; *Watson* v. *Empire Engineering Corporation,* 77 Misc. Rep. 543; *Miller* v. *State of New York,* 68 id. 607; affd., 164 App. Div. 522; 223 N. Y. 690.)

The direction by the Legislature to the State Engineer and Superintendent of Public Works, that surveys and maps shall be made and filed and notice given thereof to the owners of property, is intended, we believe, to furnish a more scientific

Fourth Department, March, 1921.          [Vol. 195.

method of taking property and preserving the record, and in making preliminary estimates of the cost of the work, than by the summary method of entry and occupancy by the engineer or by contractors operating under his direction.   By the old method the lands were not always definitely bounded and described, and mistakes were easily made and much litigation resulted between the owners and contractors who exceeded their authority.   The present method permits greater certainty in fixing the date of the appropriation, and in making proof for compensation, and is more orderly in its manner of dealing with citizens whose property is seized by virtue of the sovereign power of the State.   But the power of the State to take lands by the summary method of entry is not by this statute abandoned, nor was the orderly method prescribed for the State Engineer intended to permit a means of escape from the constitutional duty to make compensation for private property taken for public use.   The failure or neglect of the State Engineer to include in a map all the property and rights actually taken, ought not to preclude compensation for what is in fact taken.   The question of whether there has been an actual appropriation of land is entirely apart from the procedure ordinarily employed in taking it.

But if we were uncertain as to what interpretation to give the statute of 1903, the Legislature has given to the claimant the right to file its claim and jurisdiction to the Court of Claims to hear and determine it by the Enabling Acts (*supra*). These are practically identical in language and in general permit the court to award compensation or damages on meritorious claims not seasonably filed, " for or on account of the appropriation *or use* by the State of any lands, structures, waters, franchises, *rights, easements* or other property in connection with the improvement " of the Barge canal.   The words in italic are in the act of 1916, but are not in the acts of 1915 and 1918.   Nothing was said about the claim being dependent upon the filing of a map, nor does it appear that the Legislature intended to make the filing of a map the final test of whether the owner should receive pay for property taken.   The evident intent of the Legislature is to be just to the owner and award him compensation for

his property, even though he was delinquent in presenting his claim. It would be hard to reconcile this spirit with the narrow purpose to deny relief to one whose property was actually taken away from him, because some one had not made and filed a map of the property. If the property has been appropriated or used by the State for a public purpose, then the claimant has a right to have its claim passed upon by the Court of Claims, by virtue of these statutes. Having been once filed, continued refiling of the claim was not required. (*Rogers* v. *State of New York,* 184 App. Div. 340.)

In *Cooper-Snell Co.* v. *State of New York* (193 App. Div. 192; revd., 230 N. Y. 249) a different statute was under consideration as is pointed out by Judge CRANE. The Enabling Acts are not vital to the claimant's recovery here, for if there was an appropriation of land, both the notice of intention to file claim and the claim itself were apparently seasonably filed, but these acts show the intent of the Legislature to deal justly with persons whose lands are appropriated.

The learned counsel for the State contends that the claim filed and the proof presented do not establish that the property in question was actually appropriated. There is some merit in his position. The claim itself is unnecessarily prolix, vague and ambiguous, and might perhaps as readily be interpreted as a claim for a temporary taking or trespass as for a permanent appropriation; and the claimant made proof to establish a measure of damage for trespass rather than for an appropriation of the land and its appurtenances. But as the claim was dismissed because barred by the statute, the claimant is entitled to the most favorable view we may give to the claim and the evidence supporting it, and we believe it is sufficient fairly to apprise the State that the nature of the claim sought to be established is one for a permanent appropriation. At any rate, if the claim " has its roots in equity and justice," its recognition should not be denied because of technical objections to inapt language in making the claim, or because counsel on the trial made proof of the wrong measure of damages.

As the case stands, with the concession of the State's counsel in the record, we believe there is a claim made for an appropriation of lands and water rights. We follow the authority

of *Oswego & Syracuse R. R. Co.* v. *State* (226 N. Y. 351) that to destroy property is to appropriate it, and we hold that the destruction of the water rights of the claimant at the level long existing, if they were so destroyed, is an appropriation of the property, and that if property is actually taken by the State for a public use, and the owner is excluded from its possession and loses the rights and benefits to which he was theretofore entitled, then there is an appropriation of the property for which the State is bound to make compensation if a claim is seasonably filed. (*Scriver* v. *Smith*, 100 N. Y. 471; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *United States* v. *Cress*, 243 U. S. 316, 330; *Fulton Light, H. & P. Co.* v. *State of New York*, 200 N. Y. 400; *Meneely* v. *Kinser Construction Co.*, 128 App. Div. 799; *United States* v. *North American Co.*, 253 U. S. 330; *Oswego & Syracuse R. R. Co.* v. *State, supra.*)

The stipulation as to the facts contained in the record was only for the purpose of the motion to dismiss and for the appeal, so it is a question of fact not yet decided whether or not the change in the level of the pool by raising the crest of both dams did actually take lands from the claimant and did deprive it permanently of existing water rights. These questions of fact should be determined by the Court of Claims. If there had been a permanent appropriation of property compensation should be made, applying the usual measure of damages, to wit, the market value of the property actually taken, with the consequential damage resulting to the remainder, giving consideration in the latter item to the value, if any, of the increased head of water now available to the claimant. (*South Buffalo R. Co.* v. *Kirkover*, 176 N. Y. 301; *Matter of City of New York*, 190 id. 350, 360; *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 id. 471, 477; *Brainerd* v. *State of New York*, 74 Misc. Rep. 100, 106; 20 C. J. 756, 766.)

If it should be established that the interference with the rights of the claimant are only temporary, casual or intermittent and there is no permanent use or appropriation of property by the State, and no established existing right has been destroyed, then there has been a mere trespass, and as we held in *Frisbie & Stansfield Knitting Co., Inc.,* v. *State*

*of New York* (189 App. Div. 351) the claim is barred by the statute.

We have not thought it best to discuss the many other questions raised on this appeal. A trial of the issues of fact may either eliminate them entirely or present them in a different light, and any present attempt on our part to settle them would probably result only in embarrassment to the trial court. On the present state of facts, however, we hold, as we have indicated, that the Statute of Limitations has not run against a claim for appropriation of lands. We believe the claim for interference with the water supply caused by the installation of the coffer dam from July 21, 1909, to October 18, 1909, is a mere trespass and not an appropriation of property, and that claimant has lost its right to compensation by its failure seasonably to file the notice of intention to make claim.

The judgment appealed from is, therefore, reversed, with costs, and the claim is remitted to the Court of Claims to determine the fact as to whether there has been an actual appropriation of the lands of the claimant by a permanent entry upon them, by flooding the same with water impounded from the dams; and of the water rights by a destruction thereof, and by permanent interference therewith through changing the levels of the waters impounded, and if so, what compensation therefor shall be allowed.

All concur.

Judgment reversed and new trial granted, with costs to appellant to abide event.