WILLIAMSON & ADAMS, INC., Appellant, *v.* THE STATE OF NEW YORK, Respondent.*
(Claim No. 25813.)

Third Department, July 1, 1942.

McClung, Peters & Simon [*George M. Simon* of counsel], for the appellant.

* Revg. 178 Misc. 130.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor General; James H. Glavin, Jr., and Alfred F. Spagnolo, Assistant Attorneys-General, of counsel], for the respondent.*

BLISS, J.   On May 18, 1933, Dave L. Benstock, Inc., was engaged in the construction of certain buildings for the State of New York at the Kings Park State Hospital under a contract dated December 22, 1931.   On that day, for the purpose of securing and paying to its subcontractors and other creditors all sums due or to become due in completing this contract, the contractor assigned to Anthony Morrell and Peter Bratte, as trustees, under section 27▮ of the Lien Law, all moneys due and to become due to the contractor on monthly and final estimates and any retained percentages for labor performed and materials furnished in connection with the contract with the State and directed the proper State authorities to pay these moneys to the trustees.   The assignment was executed in accordance with section 27 of the Lien Law and the trustees agreed that they would receive the moneys only to the extent of an amount equal to the aggregate amount which might be paid or incurred by them in completing the contract.   The trustees thereafter entered upon the completion of the contract and furnished materials and labor therefor.   Monthly and final estimates were made in their name and paid to them by the State.   In the process of completing the contract the trustees entered into a subcontract with this claimant for the performance of all lathing to be done under the plans and specifications.   Shortly thereafter the State required the installation of certain metal lathing angles and a suspended ceiling which were not provided for under the plans and specifications. The State was advised that the extra work was done under protest and that payment was expected therefor.   The trustees also arranged with the claimant to do this extra work and assigned to claimant their claim against the State for the additional expense arising from the unjustified requirement by the State and all damages arising from such breach of contract.   Claimant performed the extra work and then filed a claim therefor.   It is this claim that has now been dismissed by the Court of Claims.

The State does not deny that it is liable to some one for its breach of contract but denies liability to claimant.   It has thus far argued successfully that the trustees were without authority to assign the claim to appellant.   It bases this contention both upon section 27 of the Lien Law, as it then existed, and the contention that there was no privity of contract between the subcontractor and the State.   As it then stood, section 27 of the Lien

Law (added by Laws of 1916, chap. 507, § 16, and amd. by Laws of 1929, chap. 515) provided that if a contractor execute to trustees and file an assignment of moneys due and to grow due under his contract with the State and lienors having liens on the moneys of the State applicable to the construction of the public improvement, to the extent of at least fifty-five per cent of the aggregate amount of such liens, consent thereto, then all such mechanics' liens should be subordinate to such an assignment. The section then provides: " Such assignment, however, shall be valid only for an amount equal to the aggregate amount which may be paid or incurred by the trustee or trustees, or their successors, in completing such contract. The certificate in writing of such trustee or trustees or their successors, to the owner, or to the State, or to such municipal corporation, certifying the amount paid or incurred by him or them toward the completion of such contract shall be final and conclusive."

It is obvious that the statute contemplated that the trustees should complete the contract between the original contractor and the State and have all power necessary to effect such completion. They stand in the shoes of the original contractor. This would reasonably include the right to execute subcontracts and pay the subcontractors either directly or by assignment. The moneys paid or agreed to be paid to the subcontractors in the completion of the contract are moneys " paid or incurred by the trustee or trustees, or their successors, in completing such contract." The trustees had ample authority to contract with the claimant to complete the lathing and also to provide for payment. When the State arbitrarily required the installation of the extra work as a part of the contract the trustees were compelled to comply with such requirement or risk a forfeiture of the contract. They were fully justified in agreeing that the moneys to be paid by the State for such extra work should be paid to the subcontractor who actually installed this extra work. The trustees were compelled either to perform this work themselves or to contract with some one else to perform it and payment therefor was but another expense incurred in completing the contract. The assignment of these moneys and claim against the State for such extra work, whether by way of damages for breach of contract or otherwise, merely constituted an expense incurred by the trustees in completing the contract. It is undisputed here that this claimant actually furnished the materials and labor for this extra work which the State had wrongfully required to be installed and it now ill becomes the State to urge that they should not be paid therefor. The trustees had ample power under section 27 of the Lien Law as it then existed to make the assignment.

The judgment of the Court of Claims should be reversed upon the law and facts and judgment directed for the claimant, with costs.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

The court reverses findings of fact numbered 9, 10 and 26 and disapproves conclusions of law numbered III, IV, V, VI, VII and VIII contained in the decision.

The court makes the findings of fact requested by the claimant in claimant's requests to find numbered 8, 9, 10, 11, 12, 20 and 21. The court makes conclusions of law numbered I, II, III and IV contained in the claimant's requests.

The court reverses findings of fact numbered 17, 18, 19, 20, 21 and 22 and disapproves conclusions of law numbered I, II, IV, V, VI and VII in so far as the same have been found by the Court of Claims, contained in the State's requests to find.

Judgment reversed on the law and facts and judgment directed in favor of the claimant in the sum of $2,165.66, with interest thereon from May 21, 1934, with costs.